Good morning, your honors. May it please the court, counsel. I believe in this case the district court put the cart before the horse in terms of how to interpret this contract. The district court, citing several cases which we can discuss more fully, indicated that there was an ambiguity in the four corners of this document, and I believe that that does not comport with Kentucky law. I think you have to look for ambiguity first before you go looking for the intention of the parties, and I think the court had that in reverse order. This was an interesting situation because these were all high-tech workers. None of them are exempt. They are not exempt high-tech workers. They are obviously in high demand. Sky Bridge was a broker, essentially, that went to a large hospital chain and obtained a contract, which my clients never saw and was not privy to, to have these workers go to various facilities, mostly on the West Coast, leaving from Louisville, and in one case from North Carolina, on almost a weekly basis, and there was a lot of travel time involved in what they did. The contract was very clear, very specific, that they would be paid an hourly wage for all time worked. They were to keep their time. There were other obligations in the contract like non-solicitation and confidentiality, and so the employer got something for this contract. As this court very well knows, employers don't typically look for employment contracts with their employees unless they want something beyond simply the hiring because they don't have to have a contract. In fact, typically, they avoid the use of a contract unless they have a specific reason for it. When someone is hired, they are an employee at will in Kentucky, just like in most states. They can be hired and fired. They can be demoted. They can have their pay reduced, but where there's a contract, that is not the case. A contract, under basic contract principles, would require a novation of the contract, a separate contract where the terms are spelled out. So here, the district court indicated that the employment contract signed by these folks, which of course did not include any reduction in pay for travel time, and in fact required them to keep... It didn't even talk about travel time. It didn't even talk about travel time. That's correct, Your Honor. It addressed how much money they should get while they're traveling. That's correct. It addressed how much time they should have while they worked. So the whole issue is whether that word work includes travel. Or whether the contract would exclude time worked. Well, if it doesn't address it, it doesn't address it. Not addressing it isn't excluding it, is it? Except that you have to... So it all gets back to whether when it says work, it includes travel, right? It does get down to whether when it says worked, it includes travel, but it certainly doesn't include travel. If work could be interpreted by the reader not to include travel, then you lose your case, right? I don't know how the contract could be interpreted in any other way. Well, okay. It's not ambiguous. Some people would think of travel as not part of work. Other people might think it was part of work. And I guess for the Fair Labor Standards Act, sometimes it's work and sometimes it's not. So it's not inherent in the word. Right. The word doesn't tell you. So if the word doesn't tell you, it becomes ambiguous then, right? Are you also relying on the sentence that says that the only thing you get paid for is for doing work? Relying on the contractual provision? Yes. Yes. I mean, I think sitting on a plane is work. Now, whether it's excluded under a statutory scheme is one thing, but whether it's payable under a contract is quite another. If you don't have context, it could certainly be unclear whether hours worked refers to travel time. I mean, do you disagree with that? I don't disagree with that, Your Honor. But the context in this case is the contract, not what happened after the contract, whether my clients accepted half pay. And by the way, I should say that we're not talking about a situation where they would get no pay. Unilaterally, they got half pay. That was a decision totally of the employer. If the employer, all they had to do is either address it in the original contract, if that was their intention, or come back with a second contract and say, oh, and by the way, travel time is going to be paid at half the hourly rate. What apparently happened is that the customer's contract may not have paid full time, may have paid half time, or may have paid nothing to Skybridge for the travel time. And unilaterally, Skybridge determined, well, we're just going to pay half of the contract rate for hours of work. So clearly, Skybridge recognized that that travel time was compensable at least to some degree. But, okay, I thought that your argument was because the contract says you only get paid for work, that provides context for the meaning of work because they, in fact, got paid for this. Well, yes, I am saying that. And I'm also saying that travel time is also work time pursuant to Kentucky law. There are some exclusions under the FLSA. But really, this case was decided with basic black letter contract principles. And the court looked to the intention of the parties first and then said, aha, the intention is, creates an ambiguity. And I think it has to be the other way around. Is the contract ambiguous? Well, no, it's not. It just didn't cover the issue of travel time. If that was the intention of the drafter, which was Skybridge, they should have had it in the contract. Okay, but what's the consequence? So are you arguing that, I thought you were saying that it was covered because even though it doesn't say end travel time, it says time worked or only going to get paid for that. And therefore, since they got paid for it, it shows that it was covered. But now I hear you saying that you think the better, the reality is that it was silent on travel time. That's an alternative. First of all, I think without carving out travel time as time worked, we have a contract that says they'll get paid for that time. And clearly, even if we were to look at the intention of the parties, it's clear that Skybridge intended to pay them something. So then the question is, well, at what rate? Is there any support for halftime in any of the documents, any of the documentation? No, it's only the district court said, well, they accepted it without complaint, or at least most of them accepted it without complaint. And obviously, there's no claim of estoppel or waiver or anything like that in this case. And so what I am saying is, the contract says you get paid for time worked. Clearly, that time worked was paid at some rate, but not at the contract rate, and it should have been. I'm not following that particular argument. It seems like if you don't think of, assuming hypothetically, that you don't think of work as necessarily including travel time, some people in common parlance might not include travel time within work. And under the federal statute, sometimes, indeed, travel is not work. So if you assume that, then this contract either says you get this full amount of pay for all work, which we deem to include travel, or it says you get paid this amount for all work, which doesn't include travel, so that travel will be compensated or not outside the confines of this contract. We're silent. I don't know how you can expressly be silent, but you could say, we say nothing about travel. And if you say nothing about travel, then it makes sense to look and see what kind of pay they received for travel, but it doesn't undermine the possibility that the contract says nothing about travel. You could still get paid for travel consistent with a contract which says this is how much you get paid for non-travel work. Does that make sense? I think so, Your Honor. And I know that the argument is somewhat circular, but I think what I would emphasize is that there's nothing in the contract that excludes travel time. What does this mean? In consideration of your services, Skybridge agrees to pay you at the following rate for hours worked, effective on the day you report to work at the client. That would certainly, not expressly, but that seems to me to exclude travel to get to the client. Well, Your Honor, if that's the case, then Skybridge paid for some. Well, and they would have been, you know, good for them for paying, but I mean, my concern is whether the contract required them to pay. I think the contract required them to pay an hourly rate for hours worked, and whether travel time is included. I'm not arguing that. The question is, what does the contract say that would either so explicitly tell us what hours worked means that we don't have an ambiguity, or by silence, are they being ambiguous? But nobody questions that the contract does say they're going to get paid for work. That's not the problem. Well, what I would say, Your Honor, is that the contract does not provide any other rate of pay than the hourly rate. Skybridge paid... I was just going to say, why couldn't we just as easily say they have a contract that they're going to get paid at this hourly rate when they're at the client, and they do the work, and when they leave the client, end of pay, and then the employer says, and by the way, we're going to pay you anyway for the travel, because we don't think it's right to have you travel without paying you. But that's not part of the contract. Well, that's exactly right, Your Honor. I think, but you have to start with the four corners of the contract, and there is a silence when it comes to a time other than work time, and there is not a definition of what work time... So what's the consequence of that in your mind? I believe that the contract rate should apply for travel time as well as work time. Based on what? Based on the fact that Skybridge acknowledged some obligation to pay for travel time, but there's no rate in the contract. So this was a contract. It's not based on common law. It's not based on statute. It's based on a rate of pay that's expressed by a contract, which makes this unusual and makes the application of this case unusual, because it just doesn't count. Your Honor, I have one quick question, if I may. What do we do if we think the contract is ambiguous as to whether work includes travel, so that the two prongs of the ambiguity are one, it includes travel, and you're right and you win, and the other is, no, the word, the other possibility is that the word work doesn't mean travel, and thus that the contract is silent with respect to travel. In that case you lose, or in that case there's a remand? Remand for the factual determination. I think what... Didn't the district court make a factual determination? The district court found that the intention of the parties created an ambiguity, or that filled in an ambiguity, essentially. It didn't say that, but he cited... I'm sorry. Intention can fill in the ambiguity. There's a huge difference between looking to the intention to create the ambiguity and looking to the intention to clear up the ambiguity. Yes, Your Honor. And you have accused the district court of looking to intention to create the ambiguity, but you just now said that the court looked to the intention to fill in the ambiguity. First of all, it wasn't ambiguous in terms of travel time as distinguished from work time. So that's one question before us. Is silence an ambiguity? That's correct. Okay. Your time is up if you want to reserve your... Thank you. May it please the court. My name is Joe Dunman. I'm here on behalf of Skybridge with my colleague, Understanding the plaintiff's arguments in this case has been very difficult, and I think the district court did exactly what should have been done here and construed the employment agreements to be silent on the issue of travel pay. And when the employment agreements are silent, it looked to the intentions of the parties and the surrounding circumstances. And all of those surrounding circumstances lead us to conclude that the plaintiffs, for one, knew that they were going to be paid a different rate for their travel. I'm losing the end of your sentence. Sorry. They were told in advance that they would be paid a different rate for their travel time. It was made very explicit in the run-up to their employment, you will be paid a rate for your time working, doing actual IT work, and you will be paid... But there's some people who said they weren't told until afterwards. Yes. At least one person who was paid. I mean, why isn't that enough to raise a factual issue that the district court couldn't resolve without a jury? Your Honor, I think the timing for almost everyone was early in the employment arrangement. Out of 13 plaintiffs, 10 of them testified that they knew about it at some point either when they signed the contract or the employment agreement or before. And then a few testified that they learned about it by the time they got their first paycheck. And when they first filled out the time sheets and the time was separated. And so within the first pay period, they definitely knew that they would be paid two different rates. And at that time, nobody quit their job or filed a complaint or protested in any way. They accepted the pay and kept working for months to years. And the district court looked to that information and said, yeah, the subsequent actions here... Wasn't there one that did complain? There was one employee who was paid, actually paid the same rate for both times. And then they said, well, we made a clerical error here. And they explained it to him. And he said, well, that doesn't seem fair. And but then he kept on working. He didn't quit. He didn't otherwise protest. He said, well, and they said, well, we're sorry, but everyone else gets paid this rate. And we have to pay you this rate as well. And then he continued to work. So there's one out of 13. It's a little strange. And there's some testimony in that fact. But everyone else testified that at least before they were first paid, they understood that the rates were different. And the district court, I think, looked to that correctly. But also, you all asked the questions and seized on the fact that there is an ambiguity here. And the term hours worked is not so clear to everyone that it includes time spent sitting on an airplane doing nothing, which is what they did when they traveled. They weren't expected to do any work. Contrary to the plaintiff's briefing, they were not expected to do any work. They were not given any tasks to complete. They just had to fly back and forth at the beginning. And the end of the week. And so that time, I think, a reasonable interpretation of the term worked would not include that time. And so there is an ambiguity in that regard. And again, you have to look at the intentions of the parties. All the plaintiffs were aware at the time they were going to get an hourly rate that was different for hours traveled. It makes sense to me to say that it's ambiguous. But I want to be clear about what you want us to do with that or what both of you want us to do with that. If it's ambiguous. And in order to do that, I think it's helpful to see exactly what the ambiguity is. The ambiguity isn't between paying them half for travel versus paying them all for travel. The ambiguity is between paying them all for travel, because travel is work, or silence. The contract either says nothing about travel or says not enough about travel to help us. Or it says you have to pay full pay for travel. All right. You have that ambiguity. Now then, the question is, if we assume that that's correct, that there's an ambiguity between those two readings, what do we do with that? Well, you simply look at the testimony of the plaintiffs and ask, what did they know? You know, is the contract breached if they know what to expect? Why isn't the various testimony of the plaintiffs enough to raise an issue as to what exactly was the amount of pay to be paid for the... Well, I think they were all consistent. They all were told it was half pay for the work... It would be half their hours worked rate. And also... We can ask your opponent, when he gets up on rebuttal, how he responds to that. Sure. And another thing to look at, in the wording of the contract itself, it says hours worked as reflected on verified time sheets, time records. In the record, we have a time record that all the plaintiffs testified that that's what they filled out every week, and it clearly distinguishes the two rates of pay. Hours worked, hours traveled. They're both right there, and they filled in their hours separately for each of those. But it also says that the only thing you get paid for is work. Well, and... So if you're getting paid for travel, then it's a fair assumption that that's part of the... within the definition of work. Look at the language very carefully, because it says the only thing you're entitled to is pay for hours worked. It doesn't say the only thing you will receive. And I think that's an important part about that language. It says the only thing you're entitled to is your hours worked rate. So that was completely gratuitous. They don't even have a right to have pay for travel. I mean, under the language of the contract, I would say, yes, they don't have a right. And also, and a lot of the time they were paid for the travel was not compensable under the FLSA anyway. There was no obligation of Skybridge to pay it, but they paid it anyway. Now, I do want to address the wage claims that the plaintiffs raised below. I want you to compare what they argued in the case below to what they're arguing now. We make several arguments about waiver. I think those are important to emphasize here. In the case below, they relied almost entirely on 29 CFR 785, which is the provision about the compensability of travel time. They rely on that entirely to argue, and it's mostly an extension of their breach of contract argument, that they had a wage and hour claim because they weren't paid that full rate that they thought they were entitled to. Well, now they've raised a bunch of new arguments under especially 29 CFR 778, which is never mentioned at any point in any of their briefing. And they had four complaints and three briefs at the summary judgment level, and they never mentioned it at all. So I want to draw the court's attention to that. And also point out that their custom and practice argument was never raised below. The wage claims just simply don't, at this level, don't have any foundation one in the record. They actually concede in the case below that they cannot prove their wage claims. They don't have any documentation or records to point to. They rely on an alternative argument that we made to the court below about overpayment, the possibility of overpayment, but the court never reached that conclusion because it didn't have to. It said, look, there's no breach of contract here, and you conceded that you don't have any, no way to prove your wage claims, and so we'll dismiss on those grounds. And I think the district court was right in that regard, and it should be affirmed on that basis. They make a Kentucky, what is it, Work and Hours Act? Kentucky Wage and Hour Act. Wage and Hour Act claim. Are you arguing that that one is waived? Well, yes, and let me explain how. I'm not sure that one's waived. Can you indicate where that, what? Yes, and the Kentucky Wage and Hour Act, the basis of that claim was the Kentucky equivalent of 29 CFR 785. Again, it just deals with the compensability of travel time outside the normal workday. That was the entire basis of their Kentucky Wage and Hour Act in the court below. And the district court rightly said, well, there's nothing in that provision that requires the same amount of pay for different types of work. And so it's, and they argued that, well, it doesn't matter because our breach of contract claim should prevail, and therefore, we're underpaid. They did argue a Kentucky Wage and Hour Act claim. They did. They did argue. So you're not saying that one's waived. You're just saying that one's wrong. It was wrong below, and the arguments they make now in support of that claim are different than the ones they brought below. And so, and there is, I mean. The arguments are different. You're saying they're making a different claim now than they did below? Under different provisions. They're making, they're citing different provisions for the basic. Carefully, which one they argued below and which one they're arguing now? The one below was 803 KAR 106574, and that's the travel away from homestead provision. And now they're arguing. Without using numbers, what are the two arguments? Well, the argument below was that the travel time being compensable meant that they had to pay the same rate for all time. Hours worked and hours traveled. Didn't make any sense to the district court. They dismissed on those grounds. They're now arguing that. Is that a Kentucky statutory claim? It's a regulation under the Kentucky Wage and Hour Act. That you have to get paid. No, it's the same as the FLSA. You're not obligated to be paid beyond the normal workday. They argued that they were. They argued that that regulation should be interpreted completely different from its identical federal regulation, and the district court dismissed that. And then what did they argue on appeal? What are they arguing now? On appeal, they cite the custom and practice rule under 803 KAR 1060. Again, not cited anywhere below. And then some references to KRS 337. Is the nature of the claim the same? Relatively. The general argument is they weren't paid what they should have been under the statute. So I hate to make their arguments for them here, but we had to try to understand this as well and argue against it below. And the arguments were very narrow in the case below, and just had no basis to carry a wage claim of this nature. And they didn't submit any records. They didn't take any depositions. All the depositions were taken by SkyBridge. No depositions of George Cronin, the director of SkyBridge who hired them, was ever taken. So the record is very, very thin. And in their briefing, I'll point you to page ID 479, they actually concede that they can't prove any claims for travel time. Now, they say under the FLSA, and then they pivot to the Kentucky Wage and Hour Act and argue that it should be interpreted totally different from its identical passage in the federal regulations. And so, yeah. So the district court didn't buy that argument, and I don't think you all should either. The claim, as I understand it now, is that SkyBridge did not include travel hours when calculating overtime. Right. And thereby undercounted the number of overtime hours that plaintiffs worked. Right. And that argument was not brought below. I mean, that's why we argued, citing the Hayward v. Cleveland Clinic case, no exception under the waiver of standard applies. They did make an argument under the same general statutory scheme. They just didn't make that particular argument below. Right. I think it matters. I think not making that particular argument matters because the statutory scheme they focused on merely dealt with the compensability of travel time. Nothing about how to calculate overtime, which hours to count in. It was very, very narrow. And I asked the court to focus on that language they used below because you'll see the argument has changed dramatically. It's very different now here on appeal. And we did not have an opportunity to rebut these arguments below. They were never raised, and they were never articulated. And the district court didn't get an opportunity to decide on them either. And as these are heavily fact-dependent, you know, they should not get a second shot at it now. Like I said, they had four complaints and three motions, three briefs on summary judgment. They had, you know, an extended discovery period. It's all complete now. And so raising different arguments now is not something the standards allow under Sixth Circuit case law. So there are no further questions. There are not. Thank you. Thank you very much. I've reserved four minutes, and I'm certainly going to entertain any questions. So if I may just make one point, this case was decided not about wage and hour, not on FLSA, but on contract principles. And that's, of course, what the district court did. It cited three cases, three Kentucky cases, for the proposition that there was, in fact, that the contract was silent on a vital matter. The court will note, if you read those cases, first of all, the Dennis v. Watson case was an oral contract. And without getting into the weeds on the facts, it had to do with insurance commissions, whether or not they were payable for future additions to that insurance policy, like adding on a pension plan and that kind of thing. There was a broker, sort of a mentor for some insurance agents, and he was supposed to get a cut of that. And then the question on an oral contract was whether or not that his 3 percent would apply to those additional, you know, additions and new policies that were written. So it's an oral contract. But here we have a contract which fixes the rate of pay. It's not necessarily a rate of pay that is derived from the Fair Labor Standards Act or from the Kentucky Wage and Hour Act. It's derived from the four corners of the document. So it's not ambiguous as to what that rate of pay is. The question is, is there any reasonable ambiguity as to whether or not there's a separate rate of pay? And if so, what would that be? Would that be half? Would that be full pay? There was testimony in the depositions that other brokers like Skybridge did pay full travel pay. In fact, some of these plaintiffs had actually been paid full pay for travel pay. So it's not as though other tech worker brokers like Skybridge would pay their workers for full travel pay. They weren't blindsided by this. I'm sorry? They weren't blindsided by this. The workers? Well, no, they weren't blindsided, but they signed a contract. And to innovate that contract or to have a new agreement as to the rate of pay, there really wasn't anything. I don't know why I'm having so much trouble. I really don't understand what your position is, whether your position is that the contract gives them a right to full pay for travel or that the contract is silent and I don't know. I'm sorry. My position is that they're entitled to the full rate of pay by virtue of the contract. The contract is silent about a lot of things that might happen in the future. And what happened in the future in this case was unilaterally, the employer decided to demote them. If the employer had decided, you know, instead of paying $22 an hour, I think we're going to pay you $15 an hour for time worked, that clearly would be a violation of the contract. I know that your position is that you're entitled to full pay for travel time. I'm just not sure how you get there. Are you saying that if you look at the four corners of the contract, it's clear that work means travel and that's what they get for travel? Yes. Okay. And what if we conclude that it's either it's not clear if work includes travel or it's silent on travel entirely? What if we conclude that? Then where does that take us? Well, if it's silent on something that would happen in the future, then it's silent. And it would take another contract to address an additional part of their pay. Okay. And I think that's sort of where the judge was going. He's kind of saying that the new contract was formed when defendants said, oh, travel time, yeah, kind of forgot about that. Okay. We will pay you, but at half rate. And your client said, well, not exactly what we were hoping for, but okay, we're taking the job. If a new contract was formed, Your Honor, that would be a new oral contract. It would be a novation of the written contract. And I would say that... It's only a novation if the written contract was not silent. Otherwise, it's a supplement, not a novation. Or it needed to be in writing because it would be violated of the statute of frauds because this was a contract that was performed for more than one year. Obviously, we didn't get into that. Let's see how you can say we have a written contract to pay you for this kind of work, and now we're entering into... And now we're going to pay you orally, based on our oral agreement, a different rate for a different kind of work. Does the Kentucky law precludes that? I believe so. I believe that the statute of frauds would preclude... If it's a contract capable of being performed for more than one year, which this clearly would. Some of the cases, by the way, including the one that the court cited, Dennis v. Watson, in fact, did deal with the statute of limitations, and they made that point. If it's oral and it's intended to last for more than one year, it's not enforceable because of the statute of frauds. Here we have an enforceable... I'm sorry. You don't get paid anything. Well, or you get paid the rate for the contract that you did sign. Did the court have... I'm sorry. Could the employer have just not paid you for travel? Could the employer have not paid them for travel at all? Yeah. I mean, based on that contract that... Okay. If it's silent on travel, could the employer have just not paid them for travel at all? I don't believe so. Why? Because travel time is work time pursuant to the Kentucky... That's the issue for us. And you will see that your red light is on. Sorry. I'm sorry. What if it's silent? What if the contract doesn't clearly say whether or not travel is work? Well, then I would say, Your Honor, that the four corners of the dock... The silence operates to whose disadvantage. And I would say the drafter of the contract. Skybridge drafted this contract. If that was their policy, they had every opportunity to put that into a contract or ask them to sign a new one. They were their employees. And then one other question. Is there anything in terms of what was said or anything at all that your clients rely on factually to say that there was, in fact, a promise to pay more than half time for this? No. The short answer is no, Your Honor, other than the fact that they were paid something. And if it was totally gratuitous, they wouldn't... No good deed goes unpunished. Well, that may be, Your Honor, but our clients were sitting on planes for three or four hours, you know, twice a week. That's not free to do their own work. If there were a trial, would there be any facts for a jury to find? I believe that as a matter of law, that the contract that was signed is what controls this case, my client's claims. So I don't know, other than if there's an ambiguity, what is that ambiguity? What are the facts that would, you know, affect the resolution of that ambiguity? But it's not the construction of a new contract. It's construing the one they have. Okay. Are there any facts that you, that would... I'm trying to find... Would it affirmatively require them to pay? No, facts that would inform the contract regarding the ambiguity. I don't believe so, Your Honor, other than the subsequent course of dealing. One was paid and, oh, it was a mistake. I'm not sure when Skybridge discovered the mistake or how they discovered the mistake. There was that. Some weren't paid at all. Some were paid halftime. Eventually, they were all paid halftime. Those are the facts that we know of from the depositions that were taken. Okay. Thank you, counsel. The case will be submitted.